## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

TANNER J. PARRICK, individually         CV 09-95-M-DWM-JCL
and as Personal Representative of the
estate of Jerry J. Parrick, Deceased,
and on behalf of Thais D. Park and
Maria Elliot,

                              ORDER

                Plaintiffs,

      vs.

FEDEX GROUNDS PACKAGE SYSTEM,
INC., BRIDGEWATER TRUCKING, LLC
SERGEY BUSLAYEV, and VLADIMIR
KOCHUKOV,

                Defendants.

_____

Pending before the Court is the Second Motion to Compel filed by Plaintiff

Tanner J. Parrick, individually and in his capacities as identified above

("Plaintiff").  The motion is filed under Fed. R. Civ. P. 37.  For the reasons

discussed below, Plaintiff's motion is granted and denied, in part, as specified

herein.

## I.  BACKGROUND

This action stems from a motor vehicle collision which occurred on

December 17, 2008, on Interstate 90 near De Borgia, Montana.  At the time of the

collision Jerry J. Parrick was on duty working for the West End Volunteer Fire Department.  Parrick was inside his emergency vehicle which was parked on the shoulder of Interstate 90 at the scene of a single-vehicle rollover.

At the same time, Defendant Sergey Buslayev was driving a semi-tractor and trailer vehicle on Interstate 90 on behalf of FedEx Ground Package System, Inc. ("FedEx").  The semi-tractor and trailer collided with Parrick's vehicle. Parrick sustained injuries in the collision which resulted in his death.

Plaintiff moves for an order compelling Defendants FedEx and Buslayev to provide more complete answers to specific discovery requests submitted by Plaintiff as identified in his motion.  Defendants oppose Plaintiff's motion, and FedEx has provided some discovery responses subsequent to the date Plaintiff filed his motion.  The Court addresses the individual discovery requests below.

## II.  DISCUSSION

In general, a litigant is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1).  Also, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.

Upon a party's failure to disclose requested information the requesting party may move to compel the opposing party to produce the requested discovery

2

materials.  Fed. R. Civ. P. 37(a)(1).  Specifically, a party's failure to answer an

interrogatory, or to respond to a request for production are grounds for obtaining

an order compelling disclosure.  Fed. R. Civ. P. 37(a)(3)(B).

Based on the liberal discovery policies of the Federal Rules of Civil

Procedure a party opposing discovery carries a "heavy burden" of showing why

discovery should not be allowed.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429

(9th Cir. 1975).  "The party who resists discovery has the burden to show that

discovery should not be allowed, and has the burden of clarifying, explaining, and

supporting its objections."  *DIRECT TV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D.

Cal. 2002) (citing *Blankenship*).

In ruling on a motion to compel, "[b]road discretion is vested in the trial

court to permit or deny discovery[.]"  *Hallett v. Morgan*, 296 F.3d 732, 751 (9th

Cir. 2002).

**A.  FedEx's Net Worth - Interrogatory No. 41**

Plaintiff moves to compel FedEx to provide an appropriate answer to his

Interrogatory No. 41 which reads as follows:  "Please state the net worth for

FedEx Ground for the period of 2004 to the present."

FedEx's answer to Interrogatory No. 41 states as follows:  "Such

information can be found on FedEx.com by looking at the annual reports, 10K,

and 10Q filings."  FedEx asserts this answer is appropriate and is permitted under

the provisions of Fed. R. Civ. P. 33(d).  FedEx also supplemented its answer by

producing a document identified as "FGS 6383."  FedEx has not, however,

submitted the referenced document to the Court, and it has not explained what the

document is.

Fed. R. Civ. P. 33(d)  provides as follows:

**(d) Option to Produce Business Records**.  If the answer to an interrogatory
may be determined by examining, auditing, compiling, abstracting, or
summarizing a party's business records (including electronically stored
information), and if the burden of deriving or ascertaining the answer will
be substantially the same for either party, the responding party may answer
by:

(1) specifying the records that must be reviewed, in sufficient detail to
enable the interrogating party to locate and identify them as readily as
the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine
and audit the records and to make copies, compilations, abstracts, or
summaries.

Under Rule 33(d), a party responding to an interrogatory may, under the

conditions specified in the rule, answer the interrogatory by specifying the records

from which the answer may be obtained and by making the records available for

inspection.  *United States ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675,

680 (E.D. Cal. 2006).  The responding party must, at a minimum, "provide the

category and location of the records from which the answers can be derived."  *Id*.

(citation omitted).  Where there exist multiple documents the responding party should specify the documents that are responsive to the interrogatories.

FedEx's answer complies with the requirements of Rule 33(d).  FedEx specifically identified its annual reports, and its 10-Q and 10-K filings as the documents which establish FedEx's net worth.  FedEx's annual reports for current and prior years, and its 10-Q and 10-K filings with the United States Securities and Exchange Commission ("SEC") are readily accessible from the FedEx.com website.  *See* http://www.fedex.com/us/investorrelations/ (accessed July 16, 2010).

FedEx represents that the net worth information Plaintiff requests can be ascertained from the documents to which FedEx refers in its discovery answer.  It is commonly known that a corporation's net worth is ordinarily reported in the corporation's 10-K filing with the SEC.  *See* http://www.thestreet.com/glossary/index.html?term=1074 (accessed July 16, 2010) and http://finance.yahoo.com/personal-finance/glossary?gloss_ind=n (accessed July 16, 2010).  Also, it is commonly known that, in general, net worth is the extent to which a corporation's assets exceed its liabilities.  *See* http://financialplan.about.com/lw/Business-Finance/Personal-finance/Net-Worth.htm (accessed July 16, 2010).  FedEx's 10-K and 10-Q filings reflect its assets and liabilities, and there exists no evidence before the Court that the information set

forth in the filings is inaccurate.  Accordingly, Plaintiff's motion to compel is

DENIED with respect to Interrogatory No. 41.

### B.  Drivers' Log Books - Requests for Production Nos. 50 and 59

Plaintiff's Requests for Production Nos. 50 and 59 sought production of the

log books for Defendants Buslayev and Vladimir Kochukov, and the log books for

two other drivers - Mr. Yanoush and Mr. Dolgikh.  In response to Plaintiff's

motion, FedEx informs the Court that it was in the process of obtaining all the

requested log books at the time Plaintiff filed his motion to compel on June 15,

2010.  FedEx represents to the Court that it produced all the requested log books

by June 21, 2010.  Plaintiff has not disputed FedEx's representation.[1]  Therefore,

based on FedEx's representation, Plaintiff's motion to compel regarding the log

books is DENIED as moot.

### C.  Password to "mygroundbiz.com" - Interrogatory No. 42

Plaintiff submitted Interrogatory No. 42 to FedEx which requests as

follows:  "Please produce the necessary password for Plaintiffs to access

mygroundbiz.com."  Plaintiff believes the website contains safe-driving

information which is available to FedEx drivers.

---

[1]Plaintiff's reply in support of his Second Motion to Compel was due on or before July 13, 2010, but Plaintiff did not file a reply brief.  *See* L.R. 7.1(d)(1)(C).

In objecting to the interrogatory FedEx stated the information was not reasonably calculated to lead to the discovery of admissible evidence, and that the website contained confidential business information.  In its response to Plaintiff's motion to compel, however, FedEx only asserts the interrogatory is overly broad and not sufficiently tailored to request relevant information.

Plaintiff is entitled to discovery of relevant matters and information that appears reasonably calculated to lead to the discovery of admissible evidence. Plaintiff contends the website contains driver safety information and FedEx does not deny Plaintiff's contention.  FedEx concedes the website may contain information relevant to Plaintiff's claim.

Based on FedEx's concession and its limited opposition to Plaintiff's motion, the Court finds Plaintiff's request seeks relevant information, or information that may at least lead to the discovery of admissible evidence given the subject of this action.  Plaintiff's motion is GRANTED in this respect.  The Court notes, however, that the issue of whether the information Plaintiff locates on the website is ultimately relevant and admissible at trial is a separate question.

**D.  Safety Audits - Request for Production No. 57**

Plaintiff seeks the production of materials FedEx generated from internal safety audits.  Plaintiff's Request for Production No. 57 asks FedEx to "[p]lease produce any an all internal safety audits, reports, and other documents generated in

regard to any internal safety audits for FedEx Ground from 2004 to the present."
Dkt. # 103-2 at 6.

FedEx responded to Plaintiff's request by asserting the request is overly
broad, unduly burdensome, and not reasonably calculated to lead to the discovery
of admissible evidence. It also argues the request seeks confidential commercial
information that should be protected from disclosure.

The parties fail to provide any further specific factual information with
respect to this discovery request. Plaintiff has not specified the type(s) of safety
audits he seeks to obtain through this discovery request. FedEx, in turn, has not
identified any "safety audits" that have actually been accomplished, nor,
obviously, articulated the basis upon which any audit should be protected from
disclosure. The parties have not provided sufficient information to the Court to
enable it to evaluate this discovery request on an informed basis.

It is true, as argued by FedEx, that the request, as framed, would cover all
types of safety audits not all of which would have any relevance to this action.
Nonetheless, the request must be read in the context of this action which involves
the operation of a motor vehicle. Where a discovery request is overly broad, the
responding party must specify the objectionable part and answer the request to the
extent it is not overly broad. *See Huggins v. Federal Express Corp.*, 250 F.R.D.

8

404, 405 (E.D. Mo. 2008); *Walls v. International Paper Co.*, 192 F.R.D. 294, 297

(D. Kan. 2000).

Consequently, Plaintiff's motion to compel is GRANTED to the extent it

seeks audits, reports and documents relating to the operation of motor vehicles.

The Court further notes, however, that FedEx opposes Plaintiff's motion on

two additional grounds.  First, FedEx contends that any safety audit documents it

may have are protected from disclosure under the self-critical analysis privilege.

Second, FedEx argues the safety audit documents contain confidential commercial

information that must be protected against discovery.  For the reasons discussed

below, FedEx has failed to establish either argument as a valid ground for

preventing discovery of its safety audit materials in general.

### 1.   Self-Critical Analysis Privilege

Jurisdiction over this action is founded upon diversity of citizenship

pursuant to 28 U.S.C. § 1332(a).  In diversity cases the federal courts apply the

privilege law of the state in which the federal court sits.  *Theme Promotions, Inc.*

*v. News America Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); Fed. R. Evid.

501.

FedEx acknowledges that Montana has not recognized the self-critical

analysis privilege outside the arena of health care facility quality assurance

reports.  Nonetheless, FedEx argues that, if presented with the question, the

9

Montana Supreme Court would recognize or extend the privilege to other circumstances.  FedEx, however, has not offered any persuasive argument that convinces this Court Montana would recognize the privilege.

Since FedEx has not offered any rationale as to why the Montana Supreme Court would adopt and extend the self-critical analysis privilege to circumstances such as those presented in this case, the Court will not undertake to predict whether the Montana courts would recognize and extend the privilege.  *See Winstanley v. Royal Consumer Information Products, Inc.*, 2006 WL 1789115, *2 (D. Ariz. 2006) (declining to predict an extension of the self-critical analysis privilege under Arizona law absent sufficient reason or basis for an extension).

The self-critical analysis privilege has been discussed by some federal courts as a matter of federal common law, but the privilege has not been recognized by the Ninth Circuit Court of Appeals.  *See Jewell v. Polar Tankers, Inc.*, 2010 WL 1460165, *1 (N.D. Cal. 2010) (citing *Union Pacific Railroad Co. v. Mower*, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000)).

Notwithstanding, some district courts in the Ninth Circuit have noted and discussed the elements of the self-critical analysis privilege if the privilege were to be recognized.  To be applicable, the following four elements of the privilege must be established by the proponent of the privilege:

> [F]irst, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; [third] the information must be of the type whose flow would be curtailed if discovery were allowed.  [quotation and citation omitted] [...] [Fourth,] no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential.

*Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 439 (N.D. Cal. 2010) (quoting

*Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 425-26 (9th Cir. 1992)).

Also, even where the privilege is upheld, it "is clearly limited to expressions of

opinion or recommendations, and not to facts underlying such opinions or

recommendations."  *Price v. County of San Diego*, 165 F.R.D. 614, 618-19 (S.D.

Cal. 1996).  The burden is on the party opposing the discovery to establish that the

elements of the self-critical analysis privilege are met.  *Randolph v. City of East

Palo Alto*, 2007 WL 4170093, *2 (N.D. Cal. 2007).

As noted above, although Plaintiff has not specified the type of safety audit

materials he seeks through his Request for Production No. 57, FedEx also has not

offered any specific safety audit documents to which it asserts the privilege would

apply.  In the absence of a specific safety audit document in question, FedEx has

failed to meet its burden to establish that all elements of the self-critical analysis

privilege are satisfied and that the privilege protects it from its obligation to

respond to Plaintiff's request.

## 2.    Confidential Commercial Information

Next, FedEx argues that the safety audit materials Plaintiff seeks are protected from disclosure on the basis that they may contain confidential commercial information which is protected from discovery pursuant to Fed. R. Civ. P. 26(c)(1)(G).  FedEx does not, however, refer to any specific confidential commercial information that would be entitled to protection, and FedEx also has not moved for the issuance of a protective order as required under Fed. R. Civ. P. 26(a)(1).  Instead, FedEx simply notes that Plaintiff's request is so broad and unlimited that there exists "the potential for abuse of the information by competing entities."  This general assertion is insufficient to preclude discovery of relevant safety audits.

A party may move for a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(G) to limit discovery or impose conditions on the disclosure of trade secret or confidential commercial information.  The Rule provides, in part, as follows:

> [Upon the motion of a party] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> [...]
>
> > (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]

12

Fed. R. Civ. P. 26(c)(1)(G).

In general, and absent a court order to the contrary, "the fruits of pre-trial discovery are [...] presumptively public." *Phillips ex. rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (quoting *San Jose Mercury News, Inc. v. United States District Court-Northern District*, 187 F.3d 1096, 1103 (9th Cir. 1999)). The Court notes "there is no absolute privilege for trade secrets and similar confidential information." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 (1979) (citation omitted).

Rule 26(c), however, authorizes a district court to override the presumption that a document is public where "good cause" is shown. *Phillips*, 307 F.3d at 1210. The required showing imposes a burden on the party to demonstrate that "specific prejudice or harm will result if no protective order is granted." *Id*. 307 F.3d at 1210-11. "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test[.]" *Id*. (quoting *Beckam Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). Therefore, sufficient information must be presented to the court to allow it to engage in a proper "good cause" analysis as is required of the district courts. *See Phillips*, 307 F.3d at 1211-12. FedEx has not presented any information to the Court in support of its argument for protection under Rule 26(c)(1)(G).

### E.  **Critical Safe Driving Behaviors - Request for Production No. 62**

In his Request for Production No. 62, Plaintiff sought production of documents responsive to his Interrogatory No. 46 which asked FedEx to provide information explaining its elimination of the "Critical Safe Driving Behaviors" program.  FedEx objected to the request for production on numerous grounds. Plaintiff now moves to compel production of the documents citing only FedEx's "improper objection" as the basis for his motion.  Plaintiff presents no other argument in support of this aspect of his motion.

FedEx explains that, with respect to Interrogatory No. 46, it has been unable to locate specific individuals who possess information responsive to the subject of the Interrogatory.  FedEx states it will supplement the Interrogatory if possible. Although not expressly stated by FedEx, presumably FedEx is also unable to locate documents responsive to Interrogatory No. 46 and Request for Production No. 62.  Plaintiff has not challenged, by way of a reply, FedEx's assertion regarding the absence of information or documents responsive to the request.

Consequently, based on FedEx's representations that it has not yet located responsive information and documents, Plaintiff's motion to compel production of documents as requested in Request for Production No. 62 is DENIED. Nonetheless, FedEx is still obligated to supplement its discovery responses as required under Fed. R. Civ. P. 26(e).

14

**F.**   **English Language Certification Form - Request for Production No. 63**

Plaintiff's Request for Production No. 63 sought production of documents responsive to his Interrogatory No. 46[2] regarding FedEx's elimination of a form for "certifying compliance regarding fluency reading and speaking the English language[.]"  FedEx objected to the request for production on numerous grounds. Plaintiff moves to compel production of the documents again citing only FedEx's "improper objection" as the basis for his motion.

In response FedEx explained it did not have a policy requiring the use of a form for certifying a person's level of fluency with the English language.  FedEx did note, however, that its Woodbridge facility undertook, on its own, to use a certification form, but FedEx asserts the facility's use of the form was not adopted by FedEx.  FedEx explains that the Woodbridge facility discontinued its use of the form after it learned the form was not approved by FedEx.

Plaintiff does not dispute FedEx's representation that it did not have a policy for the use of an English language certification form, and that it did not adopt a certification form for use by FedEx.  Nonetheless, FedEx recognizes that such a form was used at its Woodbridge facility for a period of time until its use

---

[2]The documents submitted in connection with Plaintiff's motion to compel reflect two separate interrogatories entitled "Interrogatory No. 46" - one pertaining to the Critical Safe Driving Behaviors, and another relative to the English language certification form.

was discontinued and the form was eliminated from that facility.  Therefore,

Plaintiff's motion is GRANTED to the extent FedEx possesses documents or

materials responsive to Request for Production No. 63 and which pertain to the

elimination of the certification form at FedEx's Woodbridge facility.

### G.  <u>Safety and Training Programs - Request for Production No. 64</u>

Plaintiff's Request for Production No. 64 sought production of documents

responsive to his Interrogatory No. 47.  That interrogatory requested information

regarding safety or training materials and programs which FedEx changed,

amended or eliminated.

FedEx objected to the request for production on numerous grounds, but it

also produced some documents as identified in its response to Request for

Production No. 64.  Within the text of its response, FedEx also identified specific

documents it withheld from production "based on attorney/client privilege."  Dkt.

# 120-2 at 8.  It explained that the withheld documents are "emails between FedEx

Ground personnel and Maureen Hopbell, staff attorney for FedEx Ground[.]"  *Id*.

Plaintiff moves to compel production of documents responsive to Request

for Production No. 64.  Plaintiff's sole argument in support of his motion is as

follows:  "No privilege log or privilege claims made."  Dkt. # 103 at 4.

To the contrary, as noted above FedEx asserted a claim of attorney/client

privilege with respect to the documents it withheld.  Further, the text of FedEx's

response quoted above constitutes a privilege log as required under Rule

26(b)(5)(A).

The Court finds, however, that the privilege log FedEx provided does not

sufficiently "describe[s] the nature of the documents, communications, or tangible

things" withheld in sufficient detail to enable Plaintiff to assess the privilege

claimed.  *See* Fed. R. Civ. P. 26(b)(5)(A).  The log does not sufficiently describe

the nature of the communications set forth in the referenced emails to confirm that

they involve the type of communications protected under the attorney-client

privilege.  The privilege applies only to communications in which legal advice is

sought by the client, or legal advice is given by the attorney.  *State ex rel United*

*States Fidelity and Guaranty Co. v. Montana Second Judicial District Court*, 240

Mont. 5, 11, 783 P.2d 911, 914 (Mont. 1989); Mont. Code Ann. § 26-1-803.

Therefore, on or before **July 23, 2010,** FedEx shall submit the documents

identified as FGS 6568 - 6572 to the Court for its in camera review.  The Court

will then consider whether the documents are protected under the attorney-client

privilege.

### H.  Safety Materials - Request for Production No. 65

Plaintiff moves to compel production of documents in response to his

Request for Production No. 65.  That request states as follows:

17

Please produce all safety posters and videos available to linehaul drivers and contractors, including, but not limited to the following, which were referenced in the safety meeting minutes and memo produced as FGS 3784-3861:

1. Any and all safety messages displayed at dispatch windows;
2. CVSA to linehaul contractors;
3. Any and all daily safety messages;
4. Any and all Think SAFE documents, including flyers of any kind;
5. CSA 2010 documents;
6. Safety information guides;
7. Rollover safety messages and documents;
8. "We trust your judgment" flier;
9. Maps regarding rollovers;
10. "3rd Eye" video;
11. Any and all Linehaul accident reduction plans for St. Paul and Woodbridge; and
12. Unassigned team dispatch safety awareness checklist.

In support of his motion as to Request for Production No. 65, Plaintiff states only that "No documents or DVD's were produced." Plaintiff presents no further argument in support of the motion.

In response to Plaintiff's motion FedEx asserts that, contrary to Plaintiff's statement, "many documents were provided in response to the request[.]" Dkt. # 120 at 15. Accordingly, FedEx argues that absent detailed information from Plaintiff explaining the grounds for his motion it cannot produce any further responsive materials beyond what it has already provided. Plaintiff does not dispute, by way of a reply, FedEx's assertion regarding the documents it produced.

Given the extensive materials identified in Plaintiff's Request for Production No. 65, the lack of any specific argument from Plaintiff in support of the motion, and FedEx's production of documents in response to the request (*see* Dkt. # 120-2 at 9-10), the Court finds Plaintiff has failed to establish, as required under Fed. R. Civ. P. 37(a)(3)(B)(iv), that FedEx has not produced documents as requested. Accordingly, Plaintiff's motion is DENIED in this respect.

### I.  **Buslayev's Response to Plaintiff's Third Discovery Requests**

Plaintiff states Buslayev has not responded to any of Plaintiff's Third Discovery Requests submitted on May 7, 2010. Buslayev, through counsel, concedes he has not responded to the referenced discovery requests. Accordingly, Plaintiff's motion to compel is GRANTED in this respect.

### J.  **Documents in FedEx's December 11, 2009 Privilege Log**

On December 11, 2009, Plaintiff received FedEx's First Supplemental Answers and Responses to Plaintiff's First Discovery Requests. Dkt. # 32-6. In its supplemental response FedEx noted it had withheld from production certain documents it believed were protected from discovery under the attorney-client privilege and the work product doctrine. FedEx also provided Plaintiff with a privilege log on December 11, 2009, as required under Fed. R. Civ. P. 26(b)(5)(A), identifying the documents it withheld. Dkt. # 103-6.

Plaintiff now moves to compel production of specific documents listed in FedEx's privilege log.  In response to Plaintiff's motion FedEx argues the subject documents are protected by the work product doctrine.

The documents at issue in Plaintiff's motion to compel are documents FedEx and its attorney exchanged with third parties, and are identified in the privilege log as FGS 632 through FGS 680.  The documents are letters, emails, and invoices sent to and from Christian T. Nygren/FedEx and either Crawford Claims Services ("Crawford"), Beaufort Consulting, Inc. ("Beaufort"), or Quinn Co. ("Quinn").  The dates of the documents range from December 23, 2008, through September 1, 2009.

Plaintiff states that Crawford and Quinn are third parties engaged in the business of claims adjusting and investigating.  Plaintiff asserts FedEx regularly engages these entities, in its normal or ordinary course of business, for the purpose of investigating and adjusting claims on behalf of FedEx.  Plaintiff also represents in his brief that Crawford and Quinn hired Beaufort with respect to the accident that is the subject of this action.  FedEx does not dispute Plaintiff's description of the roles that these third parties serve (or served) in this case.

As a preliminary matter, the Court must establish what law governs the application of the work product doctrine in this case because both parties assert the doctrine is controlled by Montana law.  The parties, however, rely on

20

decisional law applying the attorney-client privilege, not the work product doctrine. *See e.g. KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) (concluding that in a case founded on diversity jurisdiction the attorney-client privilege is governed by state law).

Contrary to the parties' assertions, the work product doctrine is instead governed by federal law. The work product doctrine is not an evidentiary privilege; rather, it is a limitation on discovery, or a "qualified immunity" from discovery. *Mitchell Engineering v. City and County of San Francisco*, 2010 WL 1853493, *2 (N.D. Cal. 2010); *Kandel v. Brother International Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2010). Unlike the attorney-client privilege, the scope of the work product doctrine is determined by reference to federal law when the federal court sits in diversity. *Mitchell Engineering*, 2010 WL 1853493 at *2. Because jurisdiction over this action is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a) the Court will apply federal law regarding the work product doctrine. *See Kandel*, 683 F. Supp. 2d at 1083.

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). *See Dion v. Nationwide Mutual Ins. Co.*, 185 F.R.D. 288, 292 (D. Mont. 1998).

21

[T]o qualify for protection against discovery under [Rule 26(b)(3)(A)], documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial', and (2) they must be prepared 'by or for another party or by or for that other party's representative.'

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 907 (9th Cir. 2004) (citation omitted). "The primary purpose of the work product doctrine is to 'prevent exploitation of a party's efforts in preparing for litigation'." *Holmgren v. State Farm Mutual Automobile Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

As a threshold matter, the work product doctrine protects documents from discovery only when the documents were prepared in "anticipation of litigation." The requisite anticipation requires "more than the mere possibility of litigation[.]" *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 549 (W.D. Wash. 2004).

In considering whether a particular document was prepared in anticipation of litigation, "[i]t is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation." *Heath*, 221 F.R.D. at 549-50 (quoting Advisory Committee Notes to Fed. R. Civ. P. 26(b)(3)). Consequently, application of the work product doctrine is complicated in the realm of insurance claims and related litigation because insurers are always "in the

22

business of conducting, investigating and evaluating claims against its policies."[3]

*Kansas City Southern Railway, Co. v. Nichols Construction Co., L.L.C.*, 2007 WL 2461014, *4 (E.D. La. 2007).  In the insurance industry,

> materials prepared as part of claims investigation are generally not considered work product due to the industry's need to investigate claims. Such materials are part of the ordinary course of business unless there is a sufficiently concrete connection between the investigation and potential litigation.

*Bronsink v. Allied Property and Casualty Ins.*, 2010 WL 786016, *2 (W.D. Wash. 2010).  Documents created during those processes are part of the ordinary course of business of insurance companies.  *HSS Enterprises, LLC v. Amco Ins. Co.*, 2008 WL 163669, *4 (W.D. Wash. 2008).  *See also St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 634-35 (N.D. Iowa 2000) (noting that the ordinary course of an insurer's routine business can involve several pre-

---

[3]Clearly, FedEx is not an insurance company per se.  It is, however, self-insured.  Dkt. # 17 at 13.  The discussion that follows regarding the anticipation-of-litigation analysis applicable to cases involving insurance companies applies equally to entities that are self-insured.  *Equal Employment Opportunity Commission v. Safeway Store, Inc.*, 2002 WL 31947153, *5 (N.D. Cal. 2002).

> Businesses frequently prepare documents for multiple purposes, such as to supervise corporate employees, <u>administer self insurance programs</u>, analyze safety, prevent accident reoccurrences, respond to regulatory agencies, and comply with state and federal statutory and regulatory law.

*Fru-Con Construction Corp. v. Sacramento Municipal Utility District*, 2006 WL 205099, *3 (E.D. Cal. 2006) (emphasis added).  Documents generated in these ordinary-course-of-business circumstances within which self-insured entities operate are generally not afforded work product protection.

litigation activities, but those activities do not necessarily cloak documents with

work product protection).

In the context of insurance claim disputes, the nature of the insurer's

activity may develop into activity undertaken in anticipation of litigation where a

sufficient degree of adversity arises between the insurer and the insured or

claimant.

> In determining that point in time at which an insurer's activity shifts from
> the ordinary course of business to anticipation of litigation, a court must
> determine "whether, in light of the nature of the document and the factual
> situation in the particular case, the document can fairly be said to have been
> prepared or obtained *because of the prospect of litigation*."

*Dion*, 185 F.R.D. at 292 n.1 (emphasis added) (quoting *APL Corp. v. Aetna Cas. &*

*Surety Co.*, 91 F.R.D. 10, 18 (D. Md. 1980)).  *See also In re Grand Jury*

*Subpoena*, 357 F.3d at 907 (citation omitted).  This standard is referred to as the

"because of" standard, and it applies in situations where a document could be

characterized as having been prepared for multiple purposes, i.e. either for

purposes of conducting the ordinary course of business, or in anticipation of

litigation.  *In re Grand Jury Subpoena*, 357 F.3d at 907.

The forgoing dual purpose situations arise during insurance claims

investigations.  *See St. Paul Reinsurance Co., Ltd.*, 197 F.R.D. at 635.  Therefore,

generally the insurer must identify a critical factor which made it anticipate

litigation, and the insurer must demonstrate "that the critical factor did indeed

make the insurer deal with the insured in a different way." *Stout v. Illinois Farmers Ins. Co.*, 852 F. Supp. 704, 707 (S.D. Ind. 1994). *See also Kansas City Southern Railway, Co.*, 2007 WL 2461014 at *4. In particular, where an insurer has not yet formally denied a claim, the insurer "bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate." *Bronsink*, 2010 WL 786016 at *2 (citation omitted).

The party resisting discovery of documents identified in a privilege log that were withheld on the grounds of the work product doctrine bears the burden of establishing the right to withhold the documents. *Kephart v. National Union Fire Ins. Co.*, 2007 WL 2253608, *2 (D. Mont. 2007). "The party asserting the work product doctrine has the burden of establishing, <u>for each document</u>, the rule's application." *HSS Enterprises, LLC*, 2008 WL 163669 at *4 (emphasis added).

FedEx contends the subject documents were all prepared in anticipation of litigation. Its sole argument in support of its contention, however, is as follows: "Clearly, in a case involving a fatal injury and FedEx Ground's contractor's involvement in the same, FedEx Ground's anticipation of litigation was objectively reasonable[.]" Dkt. # 120 at 17.

FedEx has wholly failed to meet its burden of proving the subject documents were created in anticipation of litigation. FedEx's assertion that litigation was anticipated is based solely on the motor vehicle accident that is now

25

the subject of this action.  This blanket assertion fails to provide the requisite

proof specific to each document identified in FedEx's December 11, 2009

privilege log.  FedEx has not provided any description of the specific

circumstances surrounding the generation of each document.  It has offered no

explanation of the reason each document was created, and it has presented no

evidentiary proof establishing that each document was created "because of the

prospect of litigation."  Absent "specific evidentiary proof that demonstrates [a

party's] resolve to litigate," the opposing party has failed to show work product

protection is appropriate. *Bronsink*, 2010 WL 786016 at *3.

Furthermore, because FedEx is self-insured the subject documents are

characterized as having been created in the ordinary course of FedEx's self-

insured activities.  Tammy Beres, FedEx's liability claims manager, confirmed in

her deposition testimony that FedEx's "usual," "customary" and "standard

business practice" is to involve an entity like Crawford to investigate claims

against FedEx.  Dkt. # 103 at 7.  Thus, FedEx's mere reliance on the motor vehicle

accident itself as having caused it to anticipate litigation is not sufficient to

counter the well-settled scope of a self-insured's ordinary course of business - that

being the investigation and evaluation of claims against FedEx.

Despite FedEx's failure to prove the requisite anticipation of litigation, the

Court notes the documents identified in FedEx's privilege log as FGS 663 through

26

FGS 683 post-date the commencement of this action which was filed on July 1, 2009.  Generally speaking, work product protection can extend to protect documents generated after the litigation is already filed.  *Equal Employment Opportunity Commission v. International Profit Associates, Inc.*, 206 F.R.D. 215, 220-21 (N.D. Ill. 2002); *Shannon v. Koehler*, 257 F.R.D. 519, 521 (N.D. Iowa 2009); *Garcia v. City of El Centro*, 214 F.R.D. 587, 595 (S.D. Cal. 2003).  In some situations "work product protection presumptively extends to the confidential documents generated [...] after the lawsuit was filed."  *Lawyers Title Ins. Corp. v. United States Fidelity & Guaranty Co.*, 122 F.R.D. 567, 570 (N.D. Cal. 1988).

Although the documents identified as FGS 663 through FGS 683 were generated after this lawsuit was filed, FedEx does not argue those documents are entitled to work product protection by virtue of the date of the documents.  Furthermore, the Court notes that where an insurer or self-insured entity is investigating a claim in its ordinary course of business, litigation is not "automatically anticipated for work-product purposes when a suit is 'commenced.'"  *HSS Enterprises, LLC*, 2008 WL 163669 at *5.  Instead, a case-by-case analysis of the anticipation of litigation is necessary.  *Id*.  FedEx has not satisfied its burden to present the requisite case-by-case analysis establishing its entitlement to assert work product protection.

Because FedEx has failed to sustain its burden in response to Plaintiff's motion to compel, the motion is GRANTED in this respect. FedEx shall produce the documents listed in the privilege log that are the subject of Plaintiff's motion.

## III.  CONCLUSION

For the reasons stated, and under authority of Fed. R. Civ. P. 37(a)(3)(B), IT IS HEREBY ORDERED that Plaintiffs' Second Motion to Compel is GRANTED and DENIED in part as specified above. On or before **July 28, 2010,** Defendants shall provide responses to Plaintiff's discovery requests in accordance with the present Order.

Plaintiff does not request an award of his attorneys' fees and costs incurred in connection with his Second Motion to Compel. Accordingly, because the Court grants Plaintiff's motion in part and denies the motion in part the Court exercises its discretion under Fed. R. Civ. P. 37(a)(5)(C) and declines to apportion the reasonable expenses between the parties. Each party shall bear its own costs and fees incurred with respect to Plaintiff's motion.

DATED this 19th day of July, 2010.

 /s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge