**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

| | |
|---|---|
| TANNER J. PARRICK, individually and as Personal Representative of the estate of Jerry J. Parrick, Deceased, and on behalf of Thais D. Park and Maria Elliot, | CV 09-95-M-DWM-JCL |
| Plaintiff, | FINDINGS & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| vs. | |
| FEDEX GROUND PACKAGE SYSTEM, INC., BRIDGEWATER TRUCKING, LLC SERGEY BUSLAYEV, and VLADIMIR KOCHUKOV, | |
| Defendants. | |

_____

This matter comes before the Court on the Plaintiff Tanner Parrick's ("Plaintiff") motion for partial summary judgment on the issue of liability against FedEx Ground Package System, Inc. ("FedEx"), Sergey Buslayev ("Buslayev")

1

and Vladimir Kochukov ("Kochukov") based on negligence per se.  For the reasons set forth below, Plaintiff's motion for partial summary judgment should be denied.

## I.  Background

This case arises out of a motor vehicle accident that occurred on December 17, 2008, on Interstate 90 near Haugan, Montana.  Dkt. 91, ¶ 1.  Jerry Parrick ("Parrick") was on duty for the West End Volunteer Fire Department at the time of the accident, and had parked his vehicle on the shoulder of the highway to create a safety zone for a one-vehicle roll-over.[1]  Dkt. 91, ¶¶ 4-6.  While Parrick was seated inside his parked vehicle, it was struck by a tractor trailer driven by Buslayev.  At the time of the collision, Buslayev was acting on behalf of FedEx.  Dkt. 91.  The tractor trailer was owned by Defendant Vladimir Kochukov's business, Bridgewater Trucking, LLC.

Parrick died as a result of the injuries he suffered in the accident, and Plaintiff subsequently commenced this action against FedEx, Bridgewater, Kochukov, and Buslayev.  Dkt.1, Dkt. 91, ¶ 3.  Plaintiff asserts several claims

---

[1] As discussed in the Court's Findings and Recommendation on Plaintiff's motion for summary judgment regarding the affirmative defense of contributory negligence, whether Parrick's vehicle was located entirely on the westbound shoulder, or whether it was partly blocking the right lane of traffic, is disputed.

2

against the various defendants, including claims for negligence, negligence per se, wrongful death, survival, punitive damages, and declaratory judgment.  Dkt. 66.  Plaintiff has moved for summary judgment on his claims for negligence per se, seeking to establish liability against FedEx, Buslayev, and Kochukov as a matter of law.

## II.  Legal Standards

A party moving for summary judgment bears the burden of demonstrating "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A movant may satisfy that burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or

denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248.

### III.  Discussion

Plaintiff argues that FedEx, Buslayev, and Kochukov (collectively "Defendants") should be held liable as a matter of law under the doctrine of negligence per se for violating various state statutes and federal regulations. Specifically, Plaintiff claims all three Defendants violated Federal Motor Carrier Safety Regulations outlining the general qualifications for drivers and governing records of duty status.  *See* 49 C.F.R. §§ 391.11, 395.8.  Plaintiff also maintains that Buslayev violated a Federal Motor Carrier Safety Regulation regarding the operation of commercial vehicles in hazardous conditions, Montana's reckless driving statute, and a state statute identifying how motorists are to approach stationary emergency vehicles.   *See* 49 C.F.R. § 392.14; Mont. Code Ann. §§ 61-8-302, 61-8-346(3).

Defendants argue summary judgment is improper on three grounds.  First, Defendants maintain that Plaintiff has not adequately pled negligence per se based on alleged violations of the Federal Motor Carrier Safety Regulations.  Second, Defendants argue it is well established under Montana law that the violation of administrative regulations such as those at issue here does not support a claim of

4

negligence per se. Finally, Defendants contend there are genuine issues of material fact as to whether they violated any of the statutes or regulations upon which Plaintiff relies, and that summary judgment is therefore improper.

### A. Federal Motor Carrier Safety Regulations

Defendants argue as a threshold matter that Plaintiff has not satisfied the notice pleading requirements of Fed. R. Civ. P. 8(a) because his Complaint does not allege negligence per se based on any violation of the Federal Motor Carrier Safety Regulations.

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendants maintain that purpose has not been satisfied here because Plaintiff's Complaint does not even reference the Federal Motor Carrier Safety Regulations, much less identify those regulations as the basis for holding any of the Defendants liable under the doctrine of negligence per se.

Plaintiff's original and two amended complaints assert identical claims for negligence per se. Dkt. 1, ¶¶ 20-24; Dkt. 35, ¶¶ 20-24; Dkt. 66, ¶¶ 20-24. In all three versions, Plaintiff alleges only that Buslayev operated "the FedEx vehicle in

5

willful and wanton disregard of [Parrick's] safety in violation of Mont. Code Ann. § 61-8-301 and by failing to approach an emergency vehicle with caution in violation of Mont. Code Ann. § 61-8-346," and that those statutory violations constitute negligence per se.  Plaintiff does not allege any regulatory violations.

Plaintiff concedes that he has not specifically pled negligence per se based on a violation of the Federal Motor Carrier Safety Regulations, but maintains he was not required to do so.  Under the circumstances, the Court agrees.  For the reasons set forth below, the regulatory violations Plaintiff asserts on summary judgment are not sufficient to establish negligence per se under Montana law. Because any evidence that the Defendants violated the Federal Motor Carrier Safety Regulations may be considered only as evidence in support of Plaintiff's general negligence claim, it is irrelevant whether or not Plaintiff pled those regulations as a basis for imposing liability under the doctrine of negligence per se.

Plaintiff, of course, views the significance of the regulatory violations he alleges differently, and maintains they do provide a legitimate basis for imposing negligence per se liability under Montana law.  But the Montana Supreme Court has repeatedly held to the contrary, making clear that "[i]n order to impute liability to a defendant as a matter of negligence per se...the defendant must have violated a

6

statute, as opposed to merely an administrative regulation, safety code, or professional standard." *Harwood v. Glacier Elec. Co-op., Inc.*, 949 P.2d 651, 656 (Mont. 1997) (citing several cases). Hesitant "to extend the doctrine of negligence per se beyond the statutory framework," the Montana Supreme Court has consistently determined "that violations of administrative regulations that are not specifically incorporated by statute do not constitute negligence per se." *Thayer v. Hicks*, 793 P.2d 784, 792 (Mont. 1990) (citing several cases). While "[t]he violation of a non-statutory standard may be used as evidence of negligence," it does not provide sufficient "grounds on which to find the defendant negligent per se." *Harwood*, 949 P.2d at 656. *See also Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir. 1982) (noting that "Montana law distinguishes between violation of a statute or ordinance and violation of the standard specified in a regulation," with the latter "to be considered as evidence of negligence.").

As these cases instruct, any violation of the non-statutory standards set forth in the Federal Motor Carrier Safety Regulations may be used as evidence of the Defendants' negligence, but does not provide a basis for finding the Defendants negligent per se. Nevertheless standing by his position to the contrary, Plaintiff asks the Court to distinguish the long line of cases represented by *Harwood* and

7

look instead to the Montana Supreme Court's decision in *Woods v. Burlington Northern & Santa Fe Railway*, 104 P.3d 1037 (Mont. 2004). In *Woods*, the Court held as a matter of law that the defendant railroad was negligent per se for violating safety regulations found within the Federal Employers Liability Act (FELA). *Woods*, 104 P.3d at 1040. Plaintiff argues the Federal Motor Carrier Safety Regulations at issue here are similar to the railroad safety regulations underpinning the *Woods* decision, and can thus be held by this Court to form the basis of a negligence per se claim. This Court is not convinced.

    As an initial matter, it is worth noting that unlike the Federal Motor Carrier Safety Regulations at issue here, regulations promulgated under the FELA are expressly deemed by Congress to be statutes. 49 U.S.C. § 54(a). *Woods* is thus consistent with Montana's longstanding precedent, pursuant to which the violation of a non-statutory standard does not provide sufficient "grounds on which to find the defendant negligent per se." *Harwood*, 949 P.2d at 656.

    And as the Montana Supreme Court has since recognized, *Woods* may be distinguished on the ground that it arose in the unique statutory context provided by the FELA. *See Giambra v. Kelsey*, 162 P.3d 134, 147 (Mont. 2007) (distinguishing *Woods* on the ground that FELA did not apply in a case where plaintiff alleged negligence per se based on violations of state statutes governing

8

the operation of a motor vehicle). Because the plaintiff in *Woods* sued the railroad under the FELA, the Montana Supreme Court appropriately looked to federal substantive law for purposes of determining whether the railroad could be held negligent per se for violating federal railroad safety regulations. *See e.g. Dovey v. BNSF Ry. Co.*, 195 P.3d 1223, 1225 (Mont. 2008) (recognizing that "[a]s a general rule, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal.")

Here, however, Plaintiff has invoked the Court's diversity jurisdiction and asserted only state law claims, including a state law claim of negligence per se. Dkt. 66. Sitting in diversity jurisdiction, this Court looks to the substantive law of Montana as the forum state for purposes of determining whether the regulatory violations Plaintiff alleges are sufficient to support a finding of negligence per se. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As noted above, the Montana Supreme Court has consistently held that for a defendant to be found negligent per se, he " must have violated a statute, as opposed to merely an administrative regulation, safety code, or professional standard."[2] *Harwood*, 949 P.2d at 656.

---

[2] Plaintiff cites *Fortner v. Tecchio Trucking Inc.*, 597 F.Supp.2d 755, 757 (E.D. Tenn. 2009) for the proposition that a violation of the Federal Motor Carrier Safety Regulations may subject a defendant to a claim of negligence per se. Dkt. 93, at 4-5. But because this Court's inquiry is governed by state law, *Fortner* is inapposite.

Under the line of cases represented by *Harwood*, any violation of the non-statutory standards set forth in the Federal Motor Carrier Safety Regulations may be used as evidence of the Defendants' negligence, but does not provide a basis for finding the Defendants negligent per se. To the extent Plaintiff asks the Court to declare as a matter of law that FedEx, Buslayev, and Kochukov are liable under the doctrine of negligence per se for violating various Federal Motor Carrier Safety Regulations, Plaintiff's motion for summary judgment should be denied accordingly.

  **B. Montana Code Annotated**

Plaintiff has also moved for summary judgment on his claim that Buslayev was negligent per se because he violated two state traffic statutes. Specifically, Plaintiff claims the undisputed evidence of record establishes that Buslayev was driving carelessly at the time of the accident in violation of Mont. Code Ann. § 61-8-302,[3] and failed to approach an emergency vehicle with caution in violation of Mont. Code Ann. § 61-8-346.

---

[3] Plaintiff's Second Amended Complaint alleges Buslayev was negligent per se for violating Montana's reckless driving statute, Mont. Code Ann. § 61-8-301, as opposed to the careless driving statute upon which Plaintiff now argues he is entitled to summary judgment. As do the parties, the Court will overlook this discrepancy and consider whether Plaintiff is entitled to summary judgment based on Buslayev's alleged violation of the careless driving statute.

Buslayev concedes that these state statutes may serve as the basis for negligence per se under Montana law, but argues summary judgment is not appropriate because there are genuine issues of material fact as to whether he violated the statutes.

To show that Buslayev was negligent per se, Plaintiff must prove the following five elements: "(1) the defendant violated a particular statute; (2) the legislature intended the statute to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the Legislature intended the statute to prevent plaintiff's injury; and (5) the Legislature intended the statute to regulate a member of defendant's class." *Olson v. Shumaker Trucking & Excavating Contractors, Inc.*, 196 P.3d 1265, 1277 (Mont. 2008). Because there are factual questions as to whether Buslayev violated the particular statutes at issue, summary judgment is not appropriate.

Montana's careless driving statute provides that "[a] person operating or driving a vehicle on a public highway shall drive it in a careful and prudent manner that does not unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the highway." Mont. Code Ann. § 61-8-302(1). Plaintiff maintains "[t]here is no doubt that Buslayev was driving carelessly" at the time of the accident. Dkt. 93, at 14.

11

For support, Plaintiff points to the deposition testimony of Trooper Steve Gaston, who was called to the scene of the accident and later prepared an investigative report. Trooper Gaston agreed that Buslayev was driving with a "wanton" and "outright disregard" for the safety of those like Parrick who were out trying to protect the scene of the prior accident. Dkt. 91-6, at 12 (Depo. Gaston, 128:8-25 (Feb. 10, 2010)). Trooper Gaston also stated that there should not "have been any question in [Buslayev's] mind to go ahead and slow down and move over in a reasonable and prudent fashion." Dkt. 91-6, at 8 (Depo. Gaston 105:23-25).

Plaintiff also cites the Collision Reconstruction Report prepared by his expert witness, David Rochford. Dkt. 91-9. According to Rochford's calculations, the FedEx tractor trailer was "approaching the Parrick vehicle between 63 and 72" miles per hour, and had slowed to only 48 miles per hour at the time of impact. Dkt. 91-9, at 24; 39. In Rochford's opinion, Buslayev "had sufficient space to reduce speed to avoid the slower vehicle without the need for changing lanes," and could have stopped the FedEx vehicle before colliding with Parrick's truck had he used "proper, controlled, braking." Dkt. 91-9, at 24-25; 42.[4]

---

[4] Rochford notes that according to the statement Buslayev provided Trooper Gaston, Buslayev changed lanes because he was "getting to close to a pickup in the right lane ahead of him." Dkt. 91-9 at 41. Rochford further explains that "[I]t

12

Rochford concluded that FedEx and its drivers, including Buslayev, "acted in reckless disregard for the safety of the motoring public and those emergency personnel responding to accidents." Dkt. 91-9, at 42-43. Finally, Plaintiff notes that Defendants' own expert, David Beaufort, has similarly concluded that "either Mr. Buslayev was traveling too fast for conditions or he waited too long before attempting to change lanes."[5] Dkt. 91-10, at 6. Plaintiff maintains this evidence is sufficient to establish as a matter of law that Buslayev was driving carelessly in violation of Mont. Code Ann. § 61-8-302.

Defendants disagree, and point to contradictory evidence and testimony as to Buslayev's rate of speed at the time of the accident and the care with which he was driving. As Defendants note, for example, expert witness David Beaufort has calculated that "at the beginning of all documented physical evidence" Buslayev's vehicle was traveling in the "mid 20's to mid to high 30's in mph," and "in the high teens to high 20's in mph" at the time of impact. Dkt. 117-2, at 6. These estimated

---

is unclear if this was Parrick's truck or another moving vehicle in the lane ahead of him. *Id*. The Plaintiff does not point to any additional evidence that elucidates whether or not another moving vehicle was in the right lane ahead of Buslayev.

[5] Plaintiff also string cites to portions of a report prepared by another of his witnesses, Albert Calkin. Dkt. 93, at 15. But Calkin's report pertains specifically to the regulatory violations Plaintiff alleges, and does not address the statutory standards that are the subject of this discussion.

speeds are significantly lower than those calculated by Plaintiff's expert. Defendants also point to Buslayev's deposition testimony, including his statement that he was driving under 35 miles per hour as he rounded the curve into the straightaway before he reached Parrick's vehicle, and began to brake as soon as he saw the flashing emergency lights. Dkt. 117-1, at 8 (Depo. Buslayev 81:4-14 (Dec. 17, 2009)). Buslayev testified that by the time he approached the scene of the accident, he "didn't really have any speed anymore" and was traveling at "maybe ten miles per hour." Dkt. 117-1, at 9 (Depo. Buslayev 82:5-11).

On this record, it cannot be said as a matter of law that Buslayev was driving carelessly as defined by statute. Whether Buslayev was driving "in a careful and prudent manner that [did] not unduly or unreasonably endanger" others entitled to use the highway is a question for the jury. Mont. Code Ann. § 61-8-302.

Citing the same evidence, Plaintiff also maintains there is no question that Buslayev violated Mont. Code Ann. § 61-8-346, which governs the operation of vehicles approaching stationary emergency vehicles. Plaintiff claims Buslayev violated subsection (3) of the statute, which provides as follows:

> Except as provided in subsection (4), upon approaching a stationary authorized emergency vehicle or police vehicle that is displaying visible

14

signals of flashing or rotating amber, blue, red, or green lights, the operator of the approaching vehicle shall:

(a) reduce the vehicle's speed, proceed with caution, and, if possible considering safety and traffic conditions, move to a lane that is not adjacent to the lane in which the authorized emergency vehicle or police vehicle is located or move as far away from the authorized emergency vehicle or police vehicle as possible; or

(b) if changing lanes is not possible or is determined to be unsafe, reduce the vehicle's speed, proceed with caution, and maintain a reduced speed, appropriate to the road and the conditions, through the area where the authorized emergency vehicle or police vehicle is stopped.

Mont. Code Ann. § 61-8-346(3).

As an initial matter, Buslayev argues that Plaintiff is looking to the wrong statutory subsection, and maintains it is actually subsection (4) that governs under the circumstances. By its terms, subsection (3) indeed applies "[e]xcept as provided in subsection (4)." Subsection (4) in turn states that:

Upon approaching a stationary authorized emergency vehicle or police vehicle that is displaying visible signals of flashing or rotating amber, blue, red, or green lights on a public highway with a posted speed limit of 50 miles per hour or greater when driving in a lane that is directly next to the emergency vehicle or police vehicle, the operator of the approaching vehicle shall reduce the vehicle's speed by at least 20 miles per hour below the posted speed limit.

Mont. Code Ann. § 61-8-346(4).

While subsection (4) specifies that a highway driver must slow down by at least 20 miles per hour when approaching a stationary emergency vehicle, that

15

subsection is properly read in tandem with subsection (3)'s more comprehensive instructions. Subsection (3) requires a motorist approaching a stationary authorized emergency vehicle to slow down, proceed with caution, and if possible change lanes or otherwise move as far away from the emergency vehicle as possible. Mont. Code. Ann. § 61-8-346(3). If the approaching motorist happens to be traveling on a public highway with a posted speed limit of at least 50 miles per hour, subsection (4) simply specifies the minimum amount by which the motorist is to slow down. Subsection (4) does not mean that a highway motorist need not otherwise comply with subsection (3)'s directives as to proceeding with caution and changing lanes if possible.

Whether Buslayev violated Mont. Code Ann. § 61-8-346 is a question of fact. Under subsection (3), Buslayev was to reduce the speed of his vehicle. Because the record indicates that the posted speed limit at the scene of the accident was 65 miles per hour,[6] subsection (4) specifies that Buslayev was to reduce the speed of his vehicle "by at least 20 miles per hour below the posted speed limit." Whether Buslayev slowed down to the requisite 45 miles per hour is disputed. As discussed above, there is contradictory evidence as to the speed with which Buslayev was traveling as he approached and collided with Parrick's

---

[6] Dkt. 117-9, at 3.

16

vehicle.  For example, Plaintiff's expert estimates that Buslayev had slowed to 48 miles per hour at the time of impact, and Defendants' expert calculates that Buslayev had slowed to less than 30 miles per hour.  Dkt. 91-9, at 24, 39; 117-6, at 6.  Whether Buslayev slowed his vehicle as required by Mont. Code Ann. § 61-8-346 is a question of fact for the jury.

Subsection (3) also required that Buslayev "proceed with caution, and, if possible considering the safety and traffic conditions," change lanes.  If Buslayev was not able to change lanes or determined it would have been unsafe to do so, he was to proceed with caution and maintain a reduced speed.  Mont. Code Ann. § 61-8-346(3).  Whether Buslayev violated these statutory provisions is likewise disputed.  Buslayev testified that as he came around the curve into the straightaway on I-90, he saw Parrick's stationary emergency vehicle partially blocking the right lane of traffic.  Dkt. 117-1 at 8.  According to Buslayev, he started to brake as soon as he saw the pickup, but lost control as he attempted to change lanes.  Dkt. 117-8, 10.  It is not clear in light of this testimony whether or not Buslayev proceeded with the requisite caution and otherwise complied with the subsection (3).

Because there are genuine issues of material fact as to whether Buslayev violated the particular statutes at issue, Plaintiff has not shown that Buslayev was

negligent per se. Plaintiff's motion for partial summary judgment should be denied accordingly.

## IV.  Conclusion

For all of the above reasons,

IT IS RECOMMENDED that Parrick's Motion for Partial Summary Judgment: Negligence Per Se be DENIED.

DATED this 3rd day of August, 2010.

                                          /s/ Jeremiah C. Lynch
                                          Jeremiah C. Lynch
                                          United States Magistrate Judge