# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

_____

| | |
|---|---|
| TANNER J. PARRICK, individually and as Personal Representative of the estate of Jerry J. Parrick, Deceased, and on behalf of Thais D. Park and Maria Elliot, | CV 09-95-M-DWM-JCL |
| Plaintiff, | ORDER |
| vs. | |
| FEDEX GROUND PACKAGE SYSTEM, INC., BRIDGEWATER TRUCKING, LLC SERGEY BUSLAYEV, and VLADIMIR KOCHUKOV, | |
| Defendants. | |

_____

Plaintiff Tanner Parrick moves in limine to preclude the Defendants from presenting testimony, evidence, or argument with respect to numerous matters. The Court addresses each aspect of the Plaintiff's motion in turn.

A.     Evidence of the Plaintiff's Decedent Jerry Parrick's Sources of Income

At the time of his death, Jerry Parrick derived his income from three sources: (1) Veterans Affairs Benefits; (2) Social Security Disability Benefits; and (3) Boilermakers' Pension Benefits.  The Plaintiff intends to elicit opinion testimony from economist Joseph Kasperick as to the loss of the income from these benefits sources sustained by the estate of Jerry Parrick.

While the Plaintiff does not object to the amounts of Jerry Parrick's income being presented at trial, he seeks to preclude the introduction of any evidence regarding the sources of Mr. Parrick's income.[1]  The Plaintiff contends the evidence regarding the sources of Mr. Parrick's income is properly excluded under Federal Rule of Evidence 403, because the probative value of the income sources is outweighed by the danger of unfair prejudice that might result from disclosure of these sources.  Specifically, the Plaintiff argues that disclosure of the sources of Mr. Parrick's incomes may "develop a bias against individuals who are disabled" and receive disability benefits.  Dkt. 107, p. 5.

According to economist Kasperick's estimates, the estate of Jerry Parrick

---

[1] Plaintiff also seeks to preclude the introduction of evidence pertaining to the fact that Mr. Parrick, at some point in time, made a claim for workers compensation benefits.  Review of economist Kasperick's report reflects that the Plaintiff is not seeking to recover damages emanating from any loss of workers compensation benefits.  Consequently, the fact that Mr. Parrick may have applied for, or even received, workers compensation benefits is irrelevant to the damage issues presented.

has sustained an economic loss of $934,833.00 – the amount of benefits Mr. Parrick would have received during his expected life reduced to present value. The Defendants are entitled to probe, through cross-examination, the accuracy of Mr. Kasperick's estimates. The Court is unpersuaded that disclosing the sources of the benefits that were being received by Mr. Parrick at the time of his death will engender an unfair bias toward Mr. Parrick.

Consequently, this aspect of the Plaintiff's motion is properly denied to the extent Plaintiff seeks to preclude evidence regarding the sources of Mr. Parrick's income. This aspect of Plaintiff's motion is, however, properly granted to the extent Plaintiff seeks to preclude the introduction of evidence or presentation of argument regarding any workers' compensation claim that may have been submitted by Mr. Parrick.

B.   Mr. Parrick's Use of Alcohol and Tobacco.

The Plaintiff seeks to preclude the Defendants from presenting evidence or argument relating to Mr. Parrick's apparent use of tobacco and alcohol. With specific reference to alcohol, the Plaintiff advises that the Defendants intend to elicit testimony from their "damages expert William Goodrich that Mr. Parrick had a history of 'binge drinking'." The Plaintiff asserts that evidence of Mr. Parrick's tobacco and alcohol use is irrelevant to the issues to be resolved by the jury. The

Defendants retort that Parrick's use of alcohol is probative of his general state of health which bears upon the issue of damages.

The Plaintiff, individually and on behalf of Mr. Parrick's other adult children, advances a claim for wrongful death under Mont. Code Ann. § 27-1-221. The damages available in a wrongful death action are derivative in nature and generally include loss of society, care, comfort, companionship, and support as well as grief, sorrow, and mental anguish. *Hern v. Safeco Ins. Co. of Ill.*, 125 P.3d 597, 606 (Mont. 2005); *State Farm Auto. Ins. Co. v. Freyer*, __ P.3d __, 2010 WL 3373543, ¶ 8 (Mont. 2010). In view of the nature of the damages available for a wrongful death, the general health of a decedent – both physical and mental – may bear directly upon the issue of damages.

By advancing a claim for wrongful death, the Plaintiff has injected the state of Mr. Parrick's health into this case.[2] Thus, the degree of Mr. Parrick's use of alcohol could well prove probative of his adult children's damages with respect to their claims for loss of consortium. The probative value of Mr. Parrick's alcohol use will depend, of course, on the nature of the injury and consequent damages

---

[2] The same would not be true if Plaintiff was pursuing only a survivorship claim – "loss of established course of life" damages being unavailable in a survivorship action. *Hern v. Safeco Ins. Co. of America*, 125 P.3d 597, 604 (Mont. 2005).

-4-

each of his adult children intend to claim. Depending on the nature of the injury and damages claimed for loss of consortium, the Defendants may well be entitled to make inquiry into the effect, if any, that Mr. Parrick's alcohol use may have had on their respective relationships. The Defendants may not, however, seek to inject evidence regarding Mr. Parrick's use of alcohol through the presentation of extrinsic evidence, such as the testimony of its retained damage expert Mr. Goodrich.

The same is true with regard to Mr. Parrick's apparent use of tobacco. Again, depending upon the nature of the injury and damages claimed by the adult children, Mr. Parrick's use of tobacco and any related health problems may prove probative on the issue of damages for loss of consortium.

It is important to note, however, that the Defendants suggest Mr. Parrick's use of alcohol and tobacco may also prove probative of his life expectancy. Testimony regarding whether Mr. Parrick's individualized use of alcohol and tobacco could have led to a diminished life expectancy would only be admissible if adequately anchored in the opinion testimony of a qualified physician. *See e.g. Meller v. The Heil Company*, 745 F.2d 1297, 1303 (10th Cir. 1984). The Defendants do not portend to have disclosed expert testimony on this subject in accordance with Fed. R. Civ. P. 26(a)(2). Accordingly, any testimony or argument

regarding the effect of Mr. Parrick's alcohol and tobacco use may have had upon his life expectancy is properly precluded.

This aspect of the Plaintiff's motion in limine is thus granted to the extent set forth above, and is denied in all other respects.

C.   Results of Toxicology Report.

Following the death of Jerry Parrick from the underlying vehicular collision, toxicology tests of Parrick's blood were performed and a report prepared. The report reflects that several prescription medications, as well as caffeine and nicotine, were detected in Mr. Parrick's blood. The Plaintiff seeks to preclude the introduction of any evidence pertaining to the results of the toxicology report on the ground that the results are irrelevant to the issues to be resolved at trial. The Plaintiff also broadly asserts that any evidence regarding Mr. Parrick's use of anti-depressant medications is irrelevant.

Again, the Defendants counter that Mr. Parrick's use of anti-depression medications is probative of his general state of health, which bears upon the issue of damage.

Both the Plaintiff's motion and the Defendants' argument sweep too broadly. Contrary to the Defendants' suggestion, the Plaintiff is correct that the actual results of the toxicology report are not probative of any issue pertaining to

damages. At the same time, the fact that Mr. Parrick was taking medication for depression is probative of his general state of health as it bears upon the issue of damages as framed by the Plaintiff. As discussed above, Mr. Parrick's general state of health may well bear upon the damages sought because Mr. Parrick's adult children have advanced a wrongful death claim.

Consequently, this aspect of the Plaintiff's motion in limine is granted to the extent that the results of the toxicology report prepared after Mr. Parrick's death will not be allowed into evidence. This aspect of the motion is denied, however, to the extent the Plaintiff seeks to preclude evidence of the fact that Mr. Parrick was medicated for depression.

### D. Testimony Pertaining to the Nature and Timing of Jerry Parrick's Death

This aspect of the Plaintiff's motion in limine requests the Court to enforce the prescriptions of Federal Rule of Evidence 702 by precluding the Defendants from eliciting testimony from any expert witness that is either speculative in nature or outside the scope of the witness's expertise. The Plaintiff can rest assured that the experienced trial judge will indeed enforce the prescriptions of Rule 702.

It appears the real thrust of the Plaintiff's motion is to preclude the

Defendants from offering lay witness opinion testimony regarding whether or not Jerry Parrick's death was instantaneous – an issue controlled by Federal Rule of Evidence 701. Because an opinion as to whether or not Mr. Parrick's death was "instantaneous" would necessarily have to be based on scientific or other specialized knowledge, an opinion on the issue would be inadmissible under Rule 701.

Cabining this aspect of the Plaintiff's motion to lay witness opinion testimony as to whether or not Mr. Parrick's death was "instantaneous," the motion is properly granted.

### E. Jerry Parrick's Non-use of a Seatbelt at the Time of the Collission.

This aspect of Plaintiff's motion appears to be designed to preclude the Defendants from presenting testimony or argument that Jerry Parrick was negligent for not having his seatbelt fastened at the time of the underlying collision. Fed Ex concedes, as it must, that Mont. Code Ann. § 61-13-106 precludes the Defendants from arguing that Parrick was in violation of the Montana Seatbelt Use Act because he did not have his seatbelt fastened while he was parked in his emergency vehicle. Notwithstanding this concession, the Defendants express concern that it will be necessary for the jury to understand Mr. Parrick's body dynamics inside the cab of his pickup during the course of the

collision – evidence that would likely infer that Mr. Parrick was not wearing his seatbelt.  The Defendants do not undertake, however, to explain the relevance of Mr. Parrick's body dynamics during the course of the collision.

This aspect of the Plaintiff's motion is granted to the extent that the Defendants are properly precluded from presenting evidence or testimony suggesting that Mr. Parrick was negligent for not having his seatbelt fastened at the time of the collision.  *See Lasar v. Ford*, 239 F.Supp.2d 1022 (D. Mont. 2003).  Whether or not evidence of Mr. Parick's body dynamics during the course of the collision may prove relevant to any issue in the case can only be determined in the context of trial.  Consequently, to the extent the Plaintiff's motion seeks to preclude any evidence regarding the body dynamics of Mr. Parrick during the course of the collision the motion is denied subject to the right of the Plaintiff to object to evidence of this nature at the time of trial.

F.     Defense Counsel's Military Career

This aspect of Plaintiff's motion seeks to preclude the Defendants from mentioning before the jury the military career of defense counsel Christian Nygren.  The Defendants state that they do not intend to mention the military career of Mr. Nygren unless evidence and argument of Mr. Parrick's military service – together with his receipt of the purple heart – is allowed to be placed

before the jury, thereby rendering Mr. Nygren's military career "relevant." The issue of Mr. Nygren's military career is not one to be resolved on the basis of relevance since his military career is not relevant to any issue.

More to the point is the fact that the Plaintiff has strenuously argued in opposition to Defendants' motion in limine that the Plaintiff has a right to "personalize" Mr. Parrick by emphasizing his military service and "heroism" because it is relevant to the loss of consortium sustained by his children. The Court agrees. At the same time, the extent to which the trial judge will allow the Plaintiff to delve into Mr. Parrick's military service – particularly in closing argument – is a matter vested within the sound discretion of the trial judge. The same is true with respect to whether or not Defendants should be allowed to mention Mr. Nygren's military service. The Court cannot predict the liberty with which the trial judge may allow the Plaintiff to argue Mr. Parrick's military service in support of Plaintiff's request for damages. Likewise, it cannot be predicted the extent to which the trial judge may deem it appropriate to allow Mr. Nygren to mention his military service to blunt a potentially overzealous appeal to the emotions of the jury based upon Mr. Parrick's service.

Consequently, this aspect of the Plaintiff's motion in limine is denied subject to the right of the Plaintiff to assert an objection at trial to the mention of

Mr. Nygren's military career.

DATED this 7th day of September, 2010

   /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge